UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENTE LOPEZ,

Petitioner,

-v.-

ERIK RICKARD, *Warden, Federal Correctional Institution, Otisville,*

Respondent.

25 Civ. 6677 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

Petitioner Vincente Lopez brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition") against Erik Rickard, the Warden of the Federal Correctional Institution at Otisville, New York ("FCI Otisville"), challenging the execution of his sentence. In particular, Petitioner contends that the Federal Bureau of Prisons ("BOP") improperly sanctioned him for possession of drugs while incarcerated at FCI Otisville, resulting in the loss of good conduct time credit and certain recreational privileges. The Government opposes the Petition. For the reasons that follow, the Court denies the Petition without prejudice to its later renewal.

[1] The Clerk of Court is directed to modify the caption of the case as shown above, to reflect the correct name of the Warden of the Federal Correctional Institution at Otisville, New York.

## BACKGROUND[2]

### A. Factual Background

On April 21, 2021, Petitioner pleaded guilty in the United States District Court for the Northern District of Ohio to conspiracy to distribute a controlled substance and the distribution of the same, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C). (*See* Ex. 1 at 1). On August 17, 2021, United States District Judge James G. Carr sentenced Petitioner principally to a term of 160 months' imprisonment, which term Petitioner is currently serving at FCI Otisville. (*See id.* at 2).

While incarcerated in a federal facility, inmates like Petitioner are subject to BOP's Inmate Discipline Program. *See* 28 C.F.R. §§ 541.1-.2. Under the Inmate Discipline Program, BOP staff may sanction inmates who have committed certain "prohibited acts" through a process designed to prevent sanctions from being imposed "in a capricious or retaliatory manner." *Id.* § 541.1. Petitioner's grievances arise from an incident that occurred during his incarceration at FCI Otisville. Specifically, on April 8, 2025, at approximately

2 This Opinion draws its facts from the uncontroverted allegations in the Government's opposition to the petition for a writ of habeas corpus ("Gov't Opp." (Dkt. #7)), as well the declaration of Jason Ferdula ("Ferdula Decl." (Dkt. #8)) and the exhibits attached thereto (Dkt. #8-1 to 8-4). *See Gregorio* v. *Lyons*, No. 25 Civ. 4145 (JPC), 2026 WL 2110876, at *4 (S.D.N.Y. July 21, 2026) (when petitioner does not, "under oath, deny any of the facts set forth in the [respondent's] return," "[t]he allegations of a return to the writ of habeas corpus ... shall be accepted as true except to the extent that the judge finds from the evidence that they are not true" (quoting 28 U.S.C. § 2248)); *see also Machibroda* v. *United States*, 368 U.S. 487, 495 (1962) (opining that a district court need not credit a petitioner's "palpably incredible" allegations).

For ease of reference, the Court refers to Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 as "Pet." (Dkt. #1); to the Government's opposition as "Gov't Opp." (Dkt. #7); to the declaration of Jason Ferdula as "Ferdula Decl." (Dkt. #8); and to exhibits attached to that declaration as "Ex. [ ]."

3:45 p.m., Correctional Officer J. Dickens discovered and confiscated "3 bags of a green leafy substance inside of a glove that was attached to the draw string of [Petitioner's] shorts." (*See* Gov't Opp. 8; Ex. 2 at 1). The substance tested positive for marijuana. (*See* Gov't Opp. 8-9; Ex. 2 at 7, 10-18). Within twenty-four hours of discovering the marijuana and obtaining the positive test result, BOP staff informed Petitioner by providing incident reports. (*See* Ex. 2 at 4 (incident report's delivery time as "04-09-2025 0646 hrs"); *id.* at 7 (revised incident report's delivery time as "04-09-2025 1544 hrs")). *See* 28 C.F.R. § 541.5(a) (The prisoner "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the prisoner's] involvement in the incident.").

Lieutenant Andy Nedwetzky began his investigation into the marijuana allegations on April 9, 2025. (*See* Gov't Opp. 9; Ex. 2 at 9). *See also* 28 C.F.R. § 541.5(b) ("After you receive an incident report, a Bureau staff member will investigate it."). After Lt. Nedwetzky read Petitioner his rights during the investigation, Petitioner "did not request a staff representative" and stated that he had "[n]o comment." (Ex. 2 at 9). Lt. Nedwetzky considered "the [i]ncident [r]eport written, the photo sheets, the staff memorand[a,] and the chain of custody" log, and determined that "the greater weight of the evidence" warranted a finding that Petitioner violated Code 113. (*Id.*). Categorized as a "[g]reatest [s]everity [p]rohibited [a]ct[ ]," Code 113 relates to the "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff," and results in significant sanctions. 28 C.F.R. § 541.3(a), tbl.1. For an inmate like Petitioner who is

subject to the Prison Litigation Reform Act, a "greatest severity level offense[ ]" carries a mandatory sanction of at least 41 days, or 75% of available good conduct time credit. *See id.* §§ 541.4(a)(2), (b)(1).

On April 11, 2025, Petitioner appeared before the Unit Disciplinary Committee (the "UDC"). (*See* Ex. 2 at 8). The UDC adopted Lt. Nedwetzky's determination and referred the charge to the Disciplinary Hearing Officer (the "DHO") with the recommendation that the DHO "apply the appropriate sanctions available." (*See id.*). *See also* 28 C.F.R. § 541.7(a)(4) (noting that "the UDC will automatically refer the incident report" of inmates charged with a Greatest or High severity prohibited act "to the DHO for further review"). BOP staff delivered notice of the disciplinary hearing and a separate notice of Petitioner's rights at the hearing. (*See* Ex. 2 at 19-20).

On April 14, 2025, DHO Jason Ferdula held a disciplinary hearing regarding Petitioner's alleged violation of Code 113. (*See* Gov't Opp. 10; Ex. 2 at 21-24). After being reminded of his rights, Petitioner again declined staff representation and responded with "[n]o comment" to the allegations against him. (Ex. 2 at 21). DHO Ferdula weighed the evidence, including the incident reports, the chain of custody log, the contraband, the photographs, and the staff memoranda, and he ultimately concluded that Petitioner committed a prohibited act specified in Code 113. (*See id.* at 22). Consistent with this violation, Petitioner lost 41 days of good conduct time and 365 days of commissary and telephone privileges. (*See* Gov't Opp. 11; Ex. 2 at 23).

Petitioner's Discipline Data Report indicated that the DHO revoked his good conduct time "to meet sanctioning guidelines" and his commissary and telephone privileges "to deter future misconduct." (*See* Ex. 3 at 1). However, when explaining the basis for the sanction, DHO Ferdula erroneously described the violation as Petitioner's illicit possession of a cell phone, rather than marijuana. (*See* Gov't Opp. 11-12; Ex. 2 at 23 ("The Disciplinary Hearing Officer considered that possessing a hazardous tool (Cell Phone) is a clear violation of the institution['s] security.")).[3] The Government maintains that, despite this "word processing error," DHO Ferdula imposed sanctions for the marijuana violation, not the prior violation involving possession of a cell phone. (*See* Gov't Opp. 21). Following the DHO hearing, Petitioner received a written copy of the decision and was informed of his right to appeal the action within 20 calendar days. (*See id.* at 12; Ex. 2 at 24).

**B. Procedural Background**

BOP established the Administrative Remedy Program to give federal prisoners the opportunity to seek review of an issue relating to their confinement. *See* 28 C.F.R. § 542.10. Pursuant to this program, Petitioner challenged the DHO sanction by filing an informal resolution request, known as a BP-8, on May 12, 2025. (*See* Gov't Opp. 12; Pet. 15). BOP staff received the request the next day, but were "[u]nable to resolve [it] at th[at] level." (Gov't Opp. 12; Pet. 15). Under the program, an inmate appealing a DHO sanction

---

[3] DHO Ferdula appears to have conflated Petitioner's marijuana offense with his September 2024 offense involving the illegal possession of a cell phone. (*See* Ex. 3 at 1).

must initially submit a BP-10 form "to the Regional Director for the region where the inmate is currently located." 28 C.F.R. §§ 542.14(d)(2), 542.15. If the inmate is dissatisfied with the Regional Director's response, the inmate must then file a BP-11 form with the General Counsel of BOP within 30 calendar days. (*Id.* § 542.15(a)).

According to Petitioner, on May 28, 2025, he properly mailed a BP-10 form to the appropriate Regional Director — the Northeast Regional Director, who is located in Philadelphia, Pennsylvania. (*See* Pet. 2, 10 ("I am filing this BP[-]11 due to me submitting my BP-10 on 05-28-2025 via mail since submitting the BP[-]10, I have not received anything on my request."); Gov't Opp. 12-13). Petitioner claims that the Northeast Regional Director received his BP-10 form because BOP staff confirmed that his "envelope" was delivered to Philadelphia on June 2, 2025. (*See* Pet. 11 (Trulincs communication); Gov't Opp. 12-13 n.1). Yet there is no indication of what exactly was mailed in this envelope (*see* Pet. 11; Gov't Opp. 12-13 n.1), and BOP has no record of receiving Petitioner's BP-10 form (*see* Ferdula Decl. ¶ 8; *see also* Ex. 4).

On July 7, 2025, after receiving no response from the Regional Director, Petitioner submitted a BP-11 form to the General Counsel. (*See* Pet. 10; Gov't Opp. 12). *See also* 28 C.F.R. §§ 542.15(a), § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."). Unlike the alleged BP-10 form, the BP-11 form is attached to the instant Petition. (*See* Pet. 10). The General Counsel received Petitioner's BP-11 form

on July 15, 2025 (*see* Ferdula Decl. ¶ 8; Ex. 4 at 2), and promptly rejected the appeal on July 22, 2025, because there was "no previous remedy on file for this incident report" (Pet. 9). The General Counsel advised Petitioner to "properly exhaust [his remedies] at the regional level" by first submitting a BP-10 form "prior to filing a BP-11" form. (*Id.*). Petitioner did not heed this advice. In lieu of filing (or, if crediting Petitioner's account, re-filing) the BP-10 form with his Regional Director, Petitioner submitted the instant Petition on August 12, 2025, pursuant to 28 U.S.C. § 2241. (*See generally* Pet.).

In the Petition, Petitioner asserts multiple due process violations challenging the DHO's decision. *First*, Petitioner argues that the revised incident report does not specify "when, where, who[,] and/or the time the alleged contraband was tested" or C.O. Dickens's role in the search of Petitioner's cell. (Pet. 46; Gov't Opp. 14). *Second*, Petitioner alleges that the incident reports were not submitted within 24 hours of discovering the marijuana. (*See* Pet. 52; Gov't Opp. 14). (*But see* Ex. 2 at 4, 7 (timestamps of the reports within the twenty-four-hour window)). *Third*, despite repeatedly requesting camera footage to prove that the incident reports were untimely, Petitioner states that he never received such footage, which failure, he claims, ultimately impugned the integrity of the DHO's hearing. (Pet. 52; Gov't Opp. 14). *Fourth*, Petitioner asserts that BOP failed to produce exculpatory documents to Petitioner supposedly in its possession. (Pet. 46; Gov't Opp. 14). *Fifth* and finally, Petitioner claims that he was denied an impartial fact-finder because DHO Ferdula's sanctions improperly considered Petitioner's prior cell

phone violation, as reflected in the written DHO decision. (Pet. 48; Gov't Opp. 14).

On February 27, 2026, the Government filed its response to the Petition, along with DHO Ferdula's declaration and its related exhibits. (*See generally* Gov't Opp.; Ferdula Decl.). The Government principally argues that Petitioner is procedurally barred from filing the instant action for failing to exhaust his administrative remedies. (Gov't Opp. 15). In the alternative, the Government contends that Petitioner's due process claims fail on the merits. (*Id.* at 15-24).

**DISCUSSION**

**A. Applicable Law**

Under 28 U.S.C. § 2241, an inmate who "is in custody in violation of the Constitution or laws or treaties of the United States" may petition a federal court for a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under [Section] 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona* v. *U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Accordingly, an inmate may file a Section 2241 petition to challenge the conditions of his confinement. *See Jiminian* v. *Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see also Thompson* v. *Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted [Section] 2241 as applying to challenges to the execution of a federal sentence"). Petitions seeking to expunge prison "disciplinary sanctions ... including the loss of good time credits" fall into this category. *Carmona*, 243 F.3d at 632 (collecting

cases); *see also United States* v. *Borland*, No. 18 Cr. 487 (KPF), 2024 WL 4026068, at *6 (S.D.N.Y. Sept. 3, 2024) ("Should [the defendant] take issue with BOP's computations of his sentence, including credits against that sentence, the proper vehicle is a habeas petition in the district of his confinement, pursuant to 28 U.S.C. § 2241.").

Federal courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Diaz* v. *Kopp*, 146 F.4th 301, 305 (2d Cir. 2025) (internal quotation marks omitted) (quoting *Harris* v. *Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (emphasis added)). *Pro se* status notwithstanding, federal prisoners must exhaust their administrative remedies before filing for habeas relief. *See Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (confirming that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (quoting *Traguth* v. *Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *see also Rinaldi* v. *Warden FCI Otisville*, No. 24 Civ. 2449 (LTS), 2024 WL 3797078, at *3 (S.D.N.Y. Aug. 13, 2024).

Notably, the "exhaustion requirement is prudential, not statutory." *Poindexter* v. *United States*, No. 24 Civ. 1258 (JLR), 2025 WL 2781320, at *2 (S.D.N.Y. Sept. 30, 2025) (internal quotation marks and citation omitted). A court may thus waive the exhaustion requirement "upon a showing of cause and prejudice." *Carmona*, 243 F.3d at 633-34; *see also Rosenthal* v. *Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) ("Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the

petitioner persuades the Court that the failure to exhaust should be excused.”). “Specifically, exhaustion of administrative remedies may not be required when “‘[i] available remedies provide no genuine opportunity for adequate relief; [ii] irreparable injury may occur without immediate judicial relief; [iii] administrative appeal would be futile; and [iv] in certain instances a plaintiff has raised a substantial constitutional question.’” *Ahmed* v. *Otisville*, No. 23 Civ. 454 (PGG) (RWL), 2023 WL 9113089, at *6 (S.D.N.Y. Dec. 13, 2023) (quoting *Beharry* v. *Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

**B. Analysis**

Petitioner claims that the Government violated his due process rights when imposing the DHO sanction, which ultimately revoked his good conduct time, as well as his commissary and telephone privileges. The Government disputes the merits of these claims but, as an antecedent matter, argues that Petitioner is barred from obtaining relief under Section 2241 because he failed to exhaust his administrative remedies when appealing the DHO sanction. Even when liberally interpreting the Petition, the Court agrees that Petitioner did not fulfill the administrative exhaustion requirement and finds no reason to excuse this failure.

As noted, Petitioner must exhaust his administrative remedies with BOP before filing for habeas relief in federal court, unless the Court excuses his failure to exhaust for prudential reasons. *See Rosenthal*, 667 F. Supp. 2d at 366 (citing *Carmona*, 243 F.3d at 634); *see also Rinaldi*, 2024 WL 3797078, at *3. Here, before Petitioner can seek habeas relief, exhaustion requires that he

first present his claim to the Regional Director through a BP-10 form, *see* 28 C.F.R. §§ 542.14(d)(2), 542(d); and if he is dissatisfied with the Regional Director's response, or receives none, he must then appeal to the General Counsel on a BP-11 form, *see id.* § 542.15(a)). While Petitioner claims that he submitted the requisite BP-10 form on May 28, 2025, before submitting his BP-11 form on July 7, 2025 (*see* Pet. 2-3, 10), the exhibits attached to the Petition and to DHO Ferdula's declaration do not support this assertion. For example, Petitioner attached his BP-11 form to his Petition but omitted his BP-10 form. (*See id.* at 10). He likewise supplied the "[d]ocket number, case number, or opinion number" of his BP-11 form but cannot do the same for his BP-10 form. (*Compare id.* at 2 (listing docket number of alleged June 2, 2025 appeal as "unknown"), *with id.* at 3 (listing docket number of July 7, 2025 appeal as "1248071-A1")). Petitioner's omission of, and inability to describe, his BP-10 form with any specificity suggests that he never properly filed a BP-10 form. This conclusion is reinforced by BOP's records, which reflect that BOP received only a BP-11 form, not a BP-10 form. (*See* Ferdula Decl. ¶ 8; Ex. 4).

As evidence that he filed his BP-10 form, Petitioner points to the envelope he sent to Philadelphia, the seat of the Northeast Regional Director. (*See* Pet. 11). However, nothing in the Petition substantiates the contents of the envelope, or even its anticipated recipient. (*See id.*; Gov't Opp. 12-13 n.1). The Court is cognizant of its obligation to liberally construe *pro se* submissions, *see Harris*, 572 F.3d at 56, and to interpret them "to raise the strongest arguments

that they suggest," *Triestman*, 470 F.3d at 474 (internal quotation marks and citation omitted (emphasis omitted)). But this "special solicitude" has its limits. *Id.* at 475 (internal citation omitted). Namely, the Court cannot manufacture proof that does not exist. Because the administrative record shows that Petitioner did not submit a BP-10 form to his Regional Director, the Court finds that Petitioner has failed to satisfy the administrative exhaustion requirement. *See, e.g.*, *Poindexter,* 2025 WL 2781320, at *3 (failure to exhaust administrative remedies where the "[p]etitioner did not appeal the Warden's decision to the Regional Director, and … does not argue otherwise"); *Thai* v. *Pullen*, No. 22 Civ. 605 (SVN), 2022 WL 17355189, at *5 (D. Conn. Dec. 1, 2022) (failure to exhaust where the petitioner "did not avail himself" of "another opportunity to justify the delay" after failing to resubmit his appeal in a timely fashion); *Gordon* v. *Lappin*, No. 07 Civ. 10948 (RWS), 2008 WL 4179233, at *3 (S.D.N.Y. Sept. 10, 2008) (failure to exhaust where the petitioner's appeal was "twice rejected for procedural defects" and thus "could not be considered 'accepted'").

Petitioner has not "proffered any excuse for his failure" to exhaust his administrative remedies, but the Court has "construe[d] his submission liberally to determine whether the circumstances excuse his failure." *Rosenthal*, 667 F. Supp. 2d at 366. Having reviewed the Petition and supporting exhibits, in addition to the exhibits attached to the Government's declaration, the Court finds that none of the exhaustion exceptions is applicable here. Petitioner has presented nothing to demonstrate that he

submitted, or even attempted to submit, the BP-10 form to the appropriate Regional Director. *Cf. Goren* v. *Apker*, No. 05 Civ. 9006 (PKC), 2006 WL 1062904, at *5 (S.D.N.Y. Apr. 20, 2006) (excusing exhaustion requirement where the petitioner attempted to appeal the decision of Regional Director three times but never received decision from General Counsel due to "various procedural defects"). Nor has he made any showing that BOP thwarted or unlawfully predetermined his sanction. *Cf. Cardoza* v. *Pullen*, No. 22 Civ. 591 (SVN), 2022 WL 3212408, at *6 (D. Conn. Aug. 9, 2022) (excusing exhaustion where "BOP staff's hindrance of [p]etitioner's appeal efforts" supported "the conclusion that any further appeals to … BOP would be an effort made in vain" (internal quotation marks and citation omitted)). It is true that Petitioner may face procedural barriers in re-filing his BP-10 form, given that more than 20 days have lapsed since the imposition of the DHO sanctions. *See* 28 C.F.R. §§ 542.14(a), (d)(2), 541.8(i). But on this record, the Court cannot find that his administrative appeal would be "futile," warranting a waiver of the exhaustion requirement. *See Ahmed*, 2023 WL 9113089, at *6 (quoting *Beharry*, 329 F.3d at 62). Petitioner could, for example, request leave for an extension to file his BP-10 form if he provides a valid reason for the delay. *See* 28 C.F.R. § 542.14(b).

But even absent an extension to file a BP-10 form, the Court is not inclined to excuse Petitioner's exhaustion requirement. "[M]ere predictions of failure" if Petitioner pursues administrative remedies are, alone, insufficient to excuse exhaustion. *Gadson* v. *Hou. House*, No. 23 Civ. 8518 (LGS) (GWG),

2023 WL 8263036, at *2 (S.D.N.Y. Nov. 30, 2023) (report and recommendation). And more importantly, Petitioner has not demonstrated "legitimate circumstances beyond [his] control [that] preclude[d] him from fully pursuing his administrative remedies." *Dov* v. *Warden*, No. 21 Civ. 8750 (SLC), 2022 WL 17730112, at *7 (S.D.N.Y. Dec. 16, 2022) (quoting *Carmona*, 243 F.3d at 634). Both BOP staff who received his BP-8 form, and the General Counsel who received his BP-11 form, made clear to Petitioner that he needed to submit a BP-10 form. (*See* Pet. 9, 15-17; Gov't Opp. 15). Yet Petitioner made no attempt to file a BP-10 form. (*See* Gov't Opp. 15). Petitioner's own recalcitrance — rather than any error by BOP — explains why a BP-10 form was never filed nor received. *See, e.g.*, *Poltenson* v. *United States*, No. 23 Civ. 479 (VLB), 2023 WL 7130241, at *3 (D. Conn. Oct. 29, 2023) (finding the petitioner did not show "cause and prejudice" where he "ma[de] no claim and d[id] not cite evidence showing that he followed all of the steps to exhaust his BOP administrative remedies").

The Court will not allow Petitioner to use the federal courts as an end-run around BOP's administrative process, especially when BOP's requirements have been clearly and repeatedly communicated to him. (*See* Pet. 9, 15-17; Gov't Opp. 15).[4] Accordingly, the Court dismisses the Petition without prejudice to its renewal.

---

[4] Even if Petitioner had exhausted his administrative remedies or exhaustion were excused, BOP likely did not violate Petitioner's due process rights in imposing sanctions for substantially the same reasons set forth in the Government's response. (*See* Gov't Opp. 15-24). Petitioner's most viable argument is that DHO Ferdula improperly considered his prior cell phone violation in imposing sanctions for possession of

## CONCLUSION

For the foregoing reasons, the Petition is DENIED without prejudice. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to modify the caption of the case as shown above, and to mail a copy of this Opinion to Petitioner at his address of record.

SO ORDERED.

Dated: October 19, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge

---

marijuana. (*See* Pet. 48; Gov't Opp. 14). However, as the Government points out, the DHO decision overwhelmingly focuses on the marijuana offense. For example, the DHO decision specifically states that the sanction is based on a Code "113 – Possessing Drugs/Alcohol," and the evidence discussed therein clearly relates to the possession of marijuana. (Ex. 2 at 21-24 (listing as evidence the incident reports, the drug test results, the staff memoranda, and the chain of custody log)). Therefore, DHO Ferdula's reference to a cell phone violation seems merely to be a scrivener's error, tied to a prior offense and immaterial to the sanction imposed here.